(6 P.3d 444)

No. 83,098

STATE OF KANSAS, *Appellee*, v. REX A. PARKS, *Appellant*.

—

Opinion filed
May 12, 2000.

*Daniel E. Monnat*, of Monnat & Spurrier, Chartered, of Wichita, for appellant.

*David Lowden*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before KNUDSON, P.J., GREEN, J., and BUCHELE, S.J.

GREEN, J.: Rex Parks appeals the judgment of the trial court denying his request for jail time credit while he was under house arrest pending the appeal of his sentence. On appeal, Parks contends that the trial court improperly denied his motion for jail time credit. We disagree and affirm.

Parks pled no contest to one count of involuntary manslaughter. The trial court sentenced him to 50 months' imprisonment and granted jail time credit for the 2 days Parks spent in jail and the 169 days he was under house arrest pending the disposition of his case. The trial court allowed Parks to remain on bond pending the appeal of his sentence. The conditions of the appeal bond were similar to the appearance bond, except Parks was required to attend three AA meetings per week and placed on electronic monitoring with Alternative Programs.

Parks' sentence was later affirmed, and Parks moved for jail time credit for the period he was under house arrest during the appeal. The trial court denied the motion.

The right to jail time credit is statutory. *State v. Fowler*, 238 Kan. 326, 336, 710 P.2d 1268 (1985). Parks argues that he is entitled to jail time credit under K.S.A. 21-4614 for house arrest while

his case was on appeal. As a result, this issue involves the interpretation of a provision of K.S.A. 21-4614. Interpretation of a statute is a question of law over which an appellate court may exercise unlimited review. *State v. Fierro*, 257 Kan. 639, 643, 895 P.2d 186 (1995).

K.S.A. 21-4614 does not authorize or require that the time an individual resides in a private residential facility as a condition of a preconviction appearance bond be credited as time spent "incarcerated" pending disposition of a case. *State v. Palmer*, 262 Kan. 745, 754, 942 P.2d 19 (1997). The relevant part of K.S.A. 21-4614 provides:

> "In any criminal action in which the defendant is convicted upon a plea of guilty or trial by court or jury or upon completion of an appeal, the judge, if he or she sentences the defendant to confinement, shall direct that for the purpose of computing defendant's sentence and his or her parole eligibility and conditional release dates thereunder, that such sentence . . . [shall contain] an allowance for the time which the defendant has spent *incarcerated* pending the disposition of the defendant's case." (Emphasis added.)

Parks maintains that the sentencing court erred in construing K.S.A. 21-4614 to deny jail time credit for house arrest pending his appeal. Parks argues that the combination of conditions imposed for house arrest is the functional equivalent to incarceration. The State argues that house arrest is not incarceration.

Our Supreme Court addressed the interpretation of K.S.A. 21-4614 in *Palmer*. The *Palmer* court reviewed *State v. Mackley*, 220 Kan. 518, 552 P.2d 628 (1976), and *State v. Babcock*, 226 Kan. 356, 597 P.2d 1117 (1979). Although these cases were decided when K.S.A. 21-4614 used the word "in jail" as opposed to the word "incarcerated," they are very relevant to the proper understanding of when an individual is entitled to jail time credit. In analyzing the propriety of entitlement to jail time credit in *Mackley* and *Babcock*, our Supreme Court focused upon the degree to which each defendant's freedom was restricted: the extent the defendant was in actual or constructive custody of jail or prison officials.

In *Mackley*, the trial court allowed credit for the days Mackley spent in the county jail but denied credit for the 109 days Mackley

was committed and held in state hospitals. Mackley appealed. In reversing the trial court, the *Mackley* court stated:

"The physical place of confinement is not important as the appellant technically continued to be in jail while held in custody at the hospitals. *He was not free on bail, had no control over his place of custody and was never free to leave the hospitals.* For all practical intents and purposes, he was still in jail. The court takes judicial notice that the state mental hospitals have the facilities to enforce confinement of their patients, which brings them within the dictionary definition of a 'jail.' " (Emphasis added.) 220 Kan. at 519.

Concluding that confinement at a state mental hospital was the equivalent of being in jail, our Supreme Court stated: "We think it is obvious the legislature intended the word 'jail' in K.S.A. 21-4614 be given its commonly understood meaning as any place of confinement and not just a local bastile." 220 Kan. at 519.

In *Babcock*, our Supreme Court reviewed the propriety of credit for time spent in a halfway house that was a privately operated facility, not subject to control of the courts, corrections officials, or law enforcement agencies. 226 Kan. at 359. Noting that custody was the critical question in determining whether an individual was entitled to jail time credit, our Supreme Court stated:

"In determining whether time in a particular facility is required to be included as jail credit pursuant to K.S.A. 21-4614, the crucial question is whether the person is in custody. In such a determination the circumstances of placement of the person in the facility are of greater significance than the nature of the facility itself." 226 Kan. at 360.

In holding Babcock's stay in the halfway house did not constitute "custody," our Supreme Court pointed out that credit granted under K.S.A. 21-4614 is limited to time spent in actual or constructive control of jail or prison officials. 226 Kan. at 361. Thus, the statutory requirement of incarceration was met only while Babcock was in jail awaiting an opening in the halfway house and when he was returned to jail on allegations of probation violation. 226 Kan. at 361.

Because the rationale in *Mackley* and *Babcock* focused upon the degree to which the defendant's freedom was restricted, the critical inquiry in *Palmer* was whether the defendant was under actual or constructive control of jail or prison officials. 262 Kan. at 753.

The *Palmer* court also considered two cases from our court on house arrest that involved K.S.A. 21-4614a, not K.S.A. 21-4614. In *State v. Williams*, 18 Kan. App. 2d 424, Syl. ¶ 4, 856 P.2d 158 (1993), we held the statute did not authorize credit for time spent under house arrest as a condition of probation. In *State v. Brasfield*, 22 Kan. App. 2d 623, 921 P.2d 834 (1996), we determined that to be entitled to jail time credit under 21-4614a, a defendant must have resided in a facility owned and operated by a community corrections program operating under the Community Corrections Act, K.S.A. 75-5290 *et seq.*

In *Palmer*, the trial court granted Palmer's motion to reduce bond on the condition he reside at a community residential facility under house arrest. In requesting credit for time spent in the facility, Palmer argued that the facility was much like community corrections.

Nevertheless, our Supreme Court determined that Palmer could not receive credit for time he spent in the residential facility because the only restriction on his liberty was the requirement that he be there at night. During the day, Palmer was free to come and go as he wished. Our Supreme Court concluded that Palmer's placement in the private facility fell short of the constructive control of the courts, corrections officials, or law enforcement agencies required in *Babcock*. 262 Kan. at 754.

Following the *Mackley-Babcock* rationale articulated in *Palmer*, we must consider the degree to which Parks' freedom was restricted. Both the appearance bond and appeal bond were conditioned on house arrest with electronic monitoring. Parks was not required to stay in a residential facility and was permitted to remain in his own home for the duration of house arrest. In *Palmer* and *Babcock*, the defendants were placed in a residential facility or halfway house and still denied credit. In *Mackley*, credit was granted for being held and committed to a state hospital.

In addition, the basic conditions of bond—prohibition on the use of drugs and alcohol, no contact with the victim's family, periodic reporting, and maintenance of a working phone line—are minimal restrictions and fall far short of constructive control by jail or prison officials so as to be considered "incarceration." While the

conditions of bond required submission to random breath or urine tests, the record does not indicate the frequency of tests, let alone if any tests were performed.

Nevertheless, Parks argues that because the condition of bond required his attendance at an aftercare program at Valley Hope and three AA meetings per week, this created significant restrictions on his liberty. The aftercare program consisted of a 1-½ hour session once a week, but Parks voluntarily requested an additional session, or two 1-½ hour sessions a week. Initially, Parks was restricted from attending AA meetings, but at sentencing asked permission to attend AA meetings. Conditions requested by Parks should not be considered in evaluating restrictions on his liberty, especially when Parks was not under the control of the government. As a result, we determine that Parks' house arrest was insufficient to be considered incarceration.

Affirmed.