No. 76,852

STATE OF KANSAS, *Appellee*, v. ROBERT L. PALMER, JR., *Appellant*.

(942 P.2d 19)

Opinion filed July 11, 1997.

*J. Brent Getty*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Doyle Baker*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Robert L. Palmer, Jr., appeals the district court's denial of credit towards computation of his sentence, parole eligibility, and conditional release dates under K.S.A. 21-4614 for time he resided in a community residential facility while on bond awaiting trial.

On November 10, 1993, Palmer was charged with aggravated sexual battery. At his first appearance, the case was scheduled for preliminary examination and bond set at $10,000. Palmer was unable to post bond. On February 25, 1994, the district court granted Palmer's motion to reduce bond on the condition that Palmer re-

side at a community residential facility under house arrest. Palmer later filed a motion requesting that he be placed under house arrest at his parents' home rather than at the pretrial residential facility. Palmer maintained that residing at the facility caused hardship because he could not secure transportation to work. The court denied the motion.

The State subsequently filed an amended information charging Palmer with one count of aggravated sexual battery and one count of kidnapping. After Palmer pled guilty to the aggravated sexual battery count, the State dismissed the kidnapping charge, and Palmer was sentenced to a determinate prison term of 32 months. Palmer subsequently filed a pro se motion asserting that the time spent on "community corrections/probation" should be computed as an allowance of time spent incarcerated pending disposition of his case.

In the motion, Palmer requested that the 126 days he resided in the community correctional residential facility be credited towards his sentence. Palmer referred to the facility as a "halfway house." Attached to Palmer's motion was an unsigned order for house arrest which referred to the facility as an "Alternative Program." At the hearing, the district court observed that pursuant to K.S.A. 21-4614, "an inmate does not receive credit for time served on a sentence of confinement for time spent under house arrest awaiting trial or as a condition of probation" and denied Palmer's request.

Palmer filed a motion for reconsideration. At a hearing on the motion, Palmer's counsel referred to the facility as an alternative program, stating: "[It is a] residential facility much like community corrections. It's the same type of program. He has to be there at a certain time each night, he's locked in all night, and during the day he is free to go just as they are at the residential community corrections center." The State's counsel observed:

"[The facility was] not under the auspices of the state, it's not part of the community corrections program, it's just a private organization with no guidelines by the courts or the state. So it can be called residential, but in reality we don't know what it was. I think the intent was that halfway houses were not to be included

[in the statute], and I would liken this non-state sanctioned program to a halfway house."

In ruling on the motion for reconsideration, the district court first observed that if K.S.A. 21-4614a (the postconviction time credit statute) applied, Palmer would be entitled to credit by statute. The court then concluded that K.S.A. 21-4614, the preconviction time credit statute, applied. The court stated:

"I am going to deny [the motion] simply because we have lots of people going into this program or programs very similar to it prior to probation—to sentencing with the intent that at sentencing they come to court and say, 'Your honor, I've completed this program, please put me on probation.' "

The district judge then stated that although entering such a program was in Palmer's best interest, Palmer was not entitled to jail time credit under the statute.

## DISCUSSION

Palmer was released prior to trial pursuant to K.S.A. 22-2802, which provides in part:

"(1) Any person charged with a crime shall, at the person's first appearance before a magistrate, be ordered released pending preliminary examination or trial upon the execution of an appearance bond in an amount specified by the magistrate and sufficient to assure the appearance of such person before the magistrate when ordered and to assure the public safety. If the person is being bound over for a felony, the bond shall also be conditioned on the person's appearance in the district court or by way of a two-way electronic audio-video communication as provided in subsection (11) at the time required by the court to answer the charge against such person and at any time thereafter that the court requires. The magistrate may impose such of the following additional conditions of release as will reasonably assure the appearance of the person for preliminary examination or trial:

"(a) Place the person in the custody of a designated person or organization agreeing to supervise such person;

"(b) place restrictions on the travel, association or place of abode of the person during the period of release;

"(c) impose any other condition deemed reasonably necessary to assure appearance as required, including a condition requiring that the person return to custody during specified hours; or

"(d) place the person under a house arrest program pursuant to K.S.A. 21-4603b, and amendments thereto."

The issue involves the interpretation of a provision of K.S.A. 21-4614, the preconviction time credit statute. Interpretation of a statute is a question of law over which an appellate court may exercise unlimited review. *State v. Fierro*, 257 Kan. 639, 643, 895 P.2d 186 (1995); *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988).

K.S.A. 21-4614 provides:

"In any criminal action in which the defendant is convicted upon a plea of guilty or trial by court or jury or upon completion of an appeal, the judge, if he or she sentences the defendant to confinement, shall direct that for the purpose of computing defendant's sentence and his or her parole eligibility and conditional release dates thereunder, that such sentence is to be computed from a date, to be specifically designated by the court in the sentencing order of the journal entry of judgment or the judgment form, whichever is delivered with the defendant to the correctional institution, *such date shall be established to reflect and shall be computed as an allowance for the time which the defendant has spent incarcerated pending the disposition of the defendant's case.* In recording the commencing date of such sentence the date as specifically set forth by the court shall be used as the date of sentence and all good time allowances as are authorized by the Kansas adult authority are to be allowed on such sentence from such date as though the defendant were actually incarcerated in any of the institutions of the state correctional system. Such jail time credit is not to be considered to reduce the minimum or maximum terms of confinement as are authorized by law for the offense of which the defendant has been convicted." (Emphasis added.)

Palmer asserts that the sentencing court erred in construing K.S.A. 21-4614 to allow a sentencing judge discretion in giving credit for time spent in a residential facility and determining that the statute does not apply to Palmer. He argues that the term "incarcerated" includes the time he spent in the residential facility while on bond awaiting trial. Palmer argues that although the program into which the district court ordered him as a condition of the appearance bond was referred to as house arrest, he was actually placed in a residential facility (not his own home) and could not leave the facility without violating a condition of his bond. Palmer claims that because the presumption of innocence enshrouded him while he resided at the Pre-Trial Resident Program, the restrictions of the appearance bond were tantamount to incarceration.

The State, quoting Black's Law Dictionary, takes the position that "incarceration" means imprisonment or confinement in a jail or penitentiary. The State argues that Palmer's circumstances cannot be equated with incarceration because Palmer was free to leave the facility during the day to work; therefore, he was not incarcerated within the meaning of K.S.A. 21-4614.

The preconviction time credit statute was previously addressed in *State v. Mackley*, 220 Kan. 518, 552 P.2d 628 (1976), and *State v. Babcock*, 226 Kan. 356, 597 P.2d 1117 (1979). At the time *Babcock* and *Mackley* were decided, K.S.A. 21-4614 did not use the word "incarcerated" but provided for crediting the time which the defendant had spent "in jail" to the sentence imposed pending the disposition of the defendant's case.

In *Mackley*, the defendant appealed a district court order which did not credit his sentence for the time he had spent at Osawatomie and Topeka State Hospital while undergoing pretrial mental examinations. After initial confinement in the county jail, Mackley was transferred and committed to the Osawatomie State Hospital for 45 days for examination to determine his competency to stand trial. After he was returned to the court, he changed his plea from not guilty to not guilty by reason of insanity. Mackley was then held in Topeka State Hospital for 64 days for mental evaluations in connection with this defense.

After Mackley pled guilty, the trial court allowed credit for the days Mackley spent in the county jail, but denied credit for the 109 days of hospital confinement. Mackley appealed. In reversing the district court, the *Mackley* court stated:

"The physical place of confinement is not important as the appellant technically continued to be in jail while held in custody at the hospitals. He was not *free on bail, had no control over his place of custody and was never free to leave the hospitals*. For all practical intents and purposes, he was still in jail. The court takes judicial notice that the state mental hospitals have the facilities to enforce confinement of their patients, which brings them within the dictionary definition of a 'jail.'

. . . .

". . . We think it is obvious the legislature intended the word 'jail' in K.S.A. 21-4614 be given its commonly understood meaning as any place of confinement and not just a local bastile." (Emphasis added.) 220 Kan. at 519.

The court determined that, under the circumstances, the confinement at the state mental hospitals was tantamount to being in jail. 220 Kan. at 519.

In *Babcock*, the defendant was convicted of burglary and received a 1- to 10-year sentence. Babcock's sentence was suspended and he was placed on probation with special conditions relative to a transitionary stay at the Topeka Halfway House. Subsequently, Babcock's probation was revoked, he was incarcerated, and he received credit for the time spent in custody. The issue on appeal of a question reserved by the State was the propriety of credit for the time Babcock spent in the halfway house.

The *Babcock* court observed that although prior to July 1, 1974, the granting of jail time credit was discretionary with the sentencing judge, the statute was amended in 1973, effective July 1, 1974, to include mandatory language. 226 Kan. at 357. The *Babcock* court then addressed two questions: whether K.S.A. 21-4614 mandated the inclusion of the halfway house time as credit on the sentence and whether, if such credit was not statutorily mandated, the sentencing court had discretion to grant or deny the credit. The *Babcock* court pointed out that the halfway house was a privately operated facility not subject to control of the courts, corrections officials, or law enforcement agencies. 226 Kan. at 359. The court stated:

"In determining whether time in a particular facility is required to be included as jail credit pursuant to K.S.A. 21-4614, the crucial question is whether the person was in custody. In such a determination, the circumstances of placement of the person in the facility was of greater significance than the nature of the facility itself." 226 Kan. at 360.

In holding that Babcock's circumstances while in the halfway house did not constitute "custody," the court observed that the credit granted in K.S.A. 21-4614 is limited to time a defendant is in the actual or constructive control of jail or prison officials. 226 Kan. at 361. The *Babcock* court noted that when Babcock resided in the halfway house, he had a court probation officer:

"When problems arose, they were reported by Halfway House personnel to the defendant's court probation officer, who then took such action as he deemed appropriate. Defendant was not in the Halfway House under the control, actual

or constructive, of the jail officials—he was there solely to fulfill a condition of probation." 226 Kan. at 361-62.

The court concluded that, in Babcock's case, the statutory requirement of incarceration was met only while he was in jail awaiting an opening in the halfway house and when he was returned to jail on allegations of probation violations. The *Babcock* court determined that K.S.A. 21-4614 did not provide that a defendant be granted credit for time spent in a halfway house fulfilling a condition of probation. The court also found that the district court had no discretion under the statute to grant defendant credit on his sentence for time spent in the halfway house. 226 Kan. at 363.

In *State v. Fowler*, 238 Kan. 326, 710 P.2d 1268 (1985), the court addressed the authority of the district court pursuant to K.S.A. 21-4614 to order jail time credit for the time a defendant resided under court order in a county community corrections residential center. *Fowler* involved consolidated direct appeals by the State. Fowler, one of the defendants, had been convicted of giving a worthless check, sentenced to 1 to 2 years' incarceration, and then granted probation and placed under a work release program from the county jail. After Fowler's probation was revoked, the district court ordered his placement in the community corrections program under certain conditions. After Fowler failed to meet those conditions, the judge found Fowler had violated the terms of his contract with the county community corrections center and ordered him to the custody of the Secretary of Corrections. The district court granted jail time credit for the time spent in the county community corrections facility, but not for the time at work release. The State appealed the grant of credit for the correctional facility, and Fowler appealed the denial of work release credit.

On appeal, the court addressed the question of whether Fowler was entitled to jail time credit during the period he resided in the community corrections center. The *Fowler* court first noted that prior to the enactment of the Kansas Code of Criminal Procedure in 1970, a defendant confined in a county jail as a condition of probation was not entitled to credit for the time served if a court subsequently revoked his probation and committed him to the cus-

tody of a state correctional institution. 238 Kan. at 336. The court then pointed out that the Kansas Code of Criminal Procedure, adopted in 1970 and later amended, contains specific statutes which allow jail time credit on a sentence where the defendant is confined under a variety of circumstances. 238 Kan. at 337. The court observed:

"K.S.A. 21-4614 requires that credit be given for all times spent in jail for the time which the defendant has spent incarcerated 'pending the disposition of the defendant's case.' This section has been construed to require credit for all time spent in jail from the time of arrest to the imposition of sentence. [Citation omitted.] K.S.A. 1984 Supp. 22-3716 provides that the court may count toward completion of the terms of probation any time between the issuing of a warrant for probation violation and the arrest. K.S.A. 1984 Supp. 22-3716(3) provides that a defendant who is under suspension of sentence and for whose return a warrant has been issued by the court shall be considered a fugitive from justice if it is found that the warrant cannot be served. If it appears that the defendant has violated the provisions of his release, the court shall determine whether the time from the issuing of the warrant to the date of the defendant's arrest, or any part of it, shall be counted as time served on probation or suspended sentence.

"In *State v. Thorn*, 1 Kan. App. 2d 460, 570 P.2d 1100 (1977), it was held that when a defendant has spent time in jail solely awaiting disposition of revocation of probation proceedings, he is entitled to an allowance of time on his sentence as provided by K.S.A. 21-4614. Under K.S.A. 22-3722, where a defendant has been committed to the custody of the Secretary of Corrections, the period served on parole or conditional release shall be deemed service of the term of confinement. Hence, an inmate is entitled to credit on his sentence for the period the secretary placed him on parole or conditional release. K.S.A. 1984 Supp. 21-4608(6)(d) provides that when indeterminate sentences are imposed to be served consecutively to sentences previously imposed in any other court, the inmate shall be given credit on the aggregate sentence for time spent incarcerated on the previous sentences, for the purpose of determining the date sentence begins and the parole eligibility, conditional release and net maximum dates.

"K.S.A. 22-3430 permits a trial court to commit a defendant, after conviction, to a state or county institution when he is in need of psychiatric care and treatment, in lieu of confinement or imprisonment. K.S.A. 22-3431 provides that time spent in the county or state institution under K.S.A. 22-3430 shall be credited against any sentence, confinement or imprisonment imposed on the defendant. K.S.A. 22-3504 declares that the court may correct an illegal sentence at any time and that the defendant shall receive full credit for the time spent in custody prior to correction of sentence." 238 Kan. at 337-38.

After reviewing these various statutes, the *Fowler* court noted that the legislature had provided for jail time credit on a sentence

where the defendant has spent time in confinement under certain specific circumstances. The court then observed that there was no statute allowing a defendant credit for time spent in confinement as a condition of probation. 238 Kan. at 338. The *Fowler* court found that K.S.A. 21-4614 is applicable only to the period from the time the defendant is arrested on criminal charges to the time his case is disposed of by the trial court. The court held that K.S.A. 21-4614 does not authorize or require jail time credit to be awarded to a defendant during the period of time the defendant resides at a community corrections facility on order of the trial court as a condition of suspension of sentence or as a condition of probation. 238 Kan. at 338-39. Turning then to Fowler's specific circumstances, the court concluded that Fowler was entitled to jail time credit for the time he was improperly committed to the community corrections facility, on the basis that he was, in effect, awaiting a proper disposition of his case. 238 Kan. at 339.

Although not dealing with K.S.A. 21-4614, two Court of Appeals cases addressing K.S.A. 21-4614a, the postconviction time credit statute, are noteworthy. In *State v. Williams*, 18 Kan. App. 2d 424, 856 P.2d 158 (1993), the Court of Appeals held the statute did not authorize credit for time spent under house arrest as a condition of probation. In *State v. Brasfield*, 22 Kan. App. 2d 623, 921 P.2d 834 (1996), the court held that to be entitled to jail time credit under the postconviction time credit statute, a defendant must have resided in a facility owned and operated by a community corrections program operated under the Community Corrections Act, K.S.A. 75-5290 *et seq.*

When analyzing the propriety of the defendants' entitlement to jail time credit in *Mackley* and *Babcock*, we focused upon the degree to which the defendants' freedom was restricted. Following our rationale in those cases, the critical inquiry here is whether Palmer, while a resident at the community facility, was under actual or constructive control of jail or prison officials. In making this determination, we give particular attention to the "circumstances of placement of the person in the facility" rather than "the nature of the facility itself." *Babcock*, 226 Kan. at 360. According to the statements made by Palmer's attorney at the hearing on Palmer's

motion to grant jail time credit, the facility where Palmer resided, like the facility in *Babcock*, was a privately operated facility not subject to control of the courts, corrections officials, or law enforcement agencies.

K.S.A. 21-4614 does not authorize or require that time an individual resides in a private residential facility as a condition of a preconviction appearance bond be credited as time spent "incarcerated" pending disposition of a case. The only restriction on Palmer's liberty at the facility in question was the requirement that he be in the facility at night, a restriction which would have been imposed upon any individual in residence. However, during the day, Palmer was free to come and go as he wished. The circumstances of Palmer's placement in the private facility falls short of the constructive control of the courts, corrections officials, or law enforcement agencies required in *Babcock*. Under these facts, Palmer cannot receive credit for the time spent in the residential facility as an allowance of time spent incarcerated pending the disposition of his case.

Affirmed.