(278 P.3d 993)
No. 106,285

State of Kansas, *Appellee*, v. Bradley James Graves,
*Appellant.*

Opinion filed June 22, 2012.

*Michelle A. Davis* and *Meryl Carver-Allmond*, of Kansas Appellate Defender Office, for appellant.

*Andrew J. Dufour*, legal intern, *Steven J. Obermeier*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before Buser, P.J., Arnold-Burger, J., and Bukaty, S.J.

Buser, J.: Bradley James Graves pled guilty to criminal threat, in violation of K.S.A. 21-3419. The district court sentenced Graves to 12 months' probation with an underlying prison term of 7 months. Graves appeals the district court's denial of his request for jail time credit for the 93 days he spent on bond while a resident at the Johnson County Community Corrections Residential Center (Residential Center) prior to sentencing. We affirm the district court.

## Factual and Procedural Background

On December 30, 2010, Graves telephoned his mother, Mary Cast, and threatened to murder her. According to Cast, Graves said, " 'I am going to murder you.' . . . 'I am just up the street. They aren't going to be there before I am able to bash your head in.' " As a result, Cast was fearful for her safety.

The next day, Cast received another telephone call from Graves. During that call, Graves again threatened to murder Cast and commit acts of physical violence against her. Graves also made threats

against Tom Patel, Cast's ex-husband, with whom she had maintained a cordial relationship. Once again, Cast was afraid for her physical well being.

On January 1, 2011, Cast and Patel observed Graves drive by Cast's home and park on an adjacent street. Patel reported that he received seven telephone calls from Graves, and Cast received four calls. Police subsequently contacted Graves, and he admitted making several threatening telephone calls to his mother.

Graves was charged with criminal threat, in violation of K.S.A. 21-3419, stalking, in violation of K.S.A. 21-3438, and two counts of harassment by telephone, in violation of K.S.A. 21-4113.

Upon his arrest, Graves was incarcerated at the Johnson County Adult Detention Center (Detention Center). The district court initially set a cash or surety bond in the amount of $7,500. Graves was unable to post the bond, however, and filed a motion for modification. On January 13, 2011, the district court granted Graves' motion and allowed him to post a $5,000 personal recognizance bond with the condition that Graves reside at the Residential Center. The Residential Center is operated by the Johnson County Department of Corrections. Additional bond conditions required that Graves abstain from alcohol, illegal drugs, and controlled substances; submit to drug testing when directed; possess no firearms; have no contact with victims or witnesses; have no violent contact with Patel; and submit to a mental health evaluation prior to being released on bond.

On January 17, 2011, Graves signed the appearance bond. The next day, he was released from the Detention Center and transported to the Residential Center by personnel from that facility. Graves remained at the Residential Center on bond throughout the rest of the court proceedings.

On February 11, 2011, Graves pled guilty to one count of criminal threat, and the State dismissed the remaining charges. Subsequently, on April 20, 2011, the district court sentenced Graves to 12 months' probation, under the supervision of the Residential Center, with an underlying prison term of 7 months. In summary, Graves resided at the Residential Center before the disposition of his case, as a condition of his bond. He continued to reside at the

Residential Center after the disposition of his case, as a condition of his probation.

Graves' presentence investigation report indicated that he was entitled to 17 days of jail time credit for time spent in the Detention Center prior to sentencing. The district court continued sentencing, however, to allow the parties to brief whether Graves was also entitled to credit for the 93 days he spent while on bond at the Residential Center pending the disposition of his case.

In his motion, Graves contended the legislature intended the phrase " 'time spent incarcerated' " as found in K.S.A. 21-4614 to include time spent at the Residential Center. Graves noted the Residential Center is a locked facility where residents must obtain approval to leave and return at the end of every day. Additionally, Graves cited K.S.A. 21-4614a (a companion statute to K.S.A. 21-4614) as indicative of the legislature's intent to consider community corrections residential living as a form of incarceration.

The State countered that Graves was not entitled to jail time credit because he was released from jail on a personal recognizance bond with the condition that he reside at the Residential Center. According to the State, although the Residential Center is controlled by the Department of Corrections, Graves was not under " 'actual constructive control of jail or prison officials,' " and as a result, he was not incarcerated for purposes of jail time credit.

On May 18, 2011, the district court held an evidentiary hearing to consider Graves' motion for jail time credit. Amy Rozzell, an employee of the Johnson County Department of Corrections, testified that she supervises admissions and programs for the Residential Center. According to Rozzell, defendants on bond are required to follow the same rules, regulations, and policies, as individuals on probation.

Rozzell testified that all individuals at the Residential Center are prohibited from leaving the facility at will. Residents with verified employment, however, are permitted to leave the facility to work during the day. Moreover, the Residential Center provides individuals with passes to leave the facility to attend medical, dental, and mental health appointments, or visits with family members. When residents are allowed to leave the facility, they are required

to sign out before leaving and sign back in upon their return. Residents are also required to return to the facility at the end of the day and to remain there during the night.

Although residents are not authorized to leave the facility without permission, the Residential Center does not have armed guards or barbed wire, and staff members do not physically restrain residents who leave the facility without permission. In fact, Rozzell testified the Residential Center's policy when a resident attempts to leave without authority is to try and persuade the resident to return. If the resident refuses to comply, the Residential Center does not take steps to forcibly prevent the individual from simply walking away from the facility.

The Residential Center serves defendants on bond and on probation. The only difference between the Residential Center's bond program and probation program is the resident's potential to progress through the Residential Center's incentive system. The Residential Center utilizes a "level system," which for probationers was described by Rozzell as follows:

"We start out on level zero. It's orientation they have to go through. 0 classes, positive classes. They can start job seeking. All of our levels are approximately two weeks long. Level 1, same thing; they hopefully find employment on level 1. They start doing their evaluations, start treatment recommended. To get to level 2 they have to be employed. And that's when the passes to go home for visitation can occur as a privilege. Level 3, kind of same thing, still work on their goals."

Unlike a probationer, however, a defendant on bond may not progress past level 2. Rozzell testified that the main difference between level 2 and 3 is that a probationer on level 3 can earn more incentives, such as longer leave passes or the ability to participate in activities at the Residential Center. According to Rozzell, after sentencing and while on probation, Graves continued on the same program track he had been on while he was on bond.

After hearing arguments and Rozzell's testimony, the district court denied Graves' motion and found that he was not entitled to jail time credit for the 93 days he spent on bond at the Residential Center pending the disposition of his case.

Graves timely appealed the district court's denial of jail time credit.

## May a Defendant at the Residential Center Earn Jail Time Credit While on Bond?

On appeal, Graves contends he is entitled to jail time credit under K.S.A. 21-4614 for the 93 days he spent on bond at the Residential Center pending the disposition of his case.

A defendant's right to jail time credit is statutory. *State v. Theis*, 262 Kan. 4, 7, 936 P.2d 710 (1997). Because resolution of this issue necessitates an analysis of K.S.A. 21-4614, our standard of review is de novo. See *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010); *State v. Guzman*, 279 Kan. 812, 813, 112 P.3d 120 (2005).

K.S.A. 21-4614 provides in pertinent part:

"In any criminal action in which the defendant is convicted upon a plea of guilty or no contest or trial by court or jury or upon completion of an appeal, the judge, if the judge sentences the defendant to confinement, shall direct that for the purpose of computing defendant's sentence and parole eligibility and conditional release dates thereunder, that such sentence is to be computed from a date, to be specifically designated by the court in the sentencing order of the journal entry of judgment or the judgment form, whichever is delivered with the defendant to the correctional institution, *such date shall be established to reflect and shall be computed as an allowance for the time which the defendant has spent incarcerated pending the disposition of the defendant's case.*" (Emphasis added.)

In short, the determination of whether a defendant is entitled to jail time credit depends on if the defendant was "incarcerated" pending the disposition of the case. See *State v. Palmer*, 262 Kan. 745, 749, 942 P.2d 19 (1997).

On appeal, Graves argues that he is entitled to jail time credit under K.S.A. 21-4614 because he was "incarcerated" at the Residential Center. Specifically, Graves contends the time he spent at the Residential Center qualifies as incarceration because he was under "the 'constructive control of the courts, corrections officials, or law enforcement agencies' [citation omitted,]" since the facility was controlled by the Department of Corrections and he was prohibited from leaving the facility.

The district court found that although an individual released on bond to the community corrections residential facility may not be granted total freedom, the Residential Center is not a jail because

"[r]estrictions on freedom at the center are far less than what exists at the Johnson County Adult Detention Center."

Kansas caselaw, while not directly on point, provides important guidance to resolve this issue. In *Palmer*, our Kansas Supreme Court reviewed K.S.A. 21-4614 in the context of a defendant who was granted an appearance bond with the special condition that he reside at a private community residential facility under house arrest. In his motion for jail time credit, Palmer referred to the community residential facility as a " 'halfway house,' " and at a hearing on the motion, Palmer's counsel referred to the facility as "an alternative program":

" '[It is a] residential facility much like community corrections. It's the same type of program. He has to be there at a certain time each night, he's locked in all night, and during the day he is free to go just as they are at the residential community corrections center.' " 262 Kan. at 746.

The prosecutor described the facility as follows:

" '[The facility was] not under the auspices of the state, it's not part of the community corrections program, it's just a private organization with no guidelines by the courts or the state. So it can be called residential, but in reality we don't know what it was. I think the intent was that halfway houses were not to be included [in the statute], and I would liken this non-state sanctioned program to a halfway house.' " 262 Kan. at 746-47.

The district court denied Palmer's request for jail time credit for the time he spent at the facility on bond pending the resolution of his case. On appeal, Palmer argued that the term " 'incarcerated' " included the time he spent in the residential facility while on bond because he could not leave the facility at will; thus, the restrictions of his appearance bond were "tantamount to incarceration." 262 Kan. at 748. The State countered that the facility was not akin to " 'incarceration' " because Palmer was free to leave the facility during the day to work. 262 Kan. at 749.

On appeal, our Supreme Court explained that the critical inquiry is whether the defendant was "under actual or constructive control of jail or prison officials." 262 Kan. at 753. The court explained that in making this determination, particular attention should be given to the " *'circumstances of placement* of the person in the

facility' rather than 'the nature of the facility itself.' [Citation omitted.]" (Emphasis added.) 262 Kan. at 753.

The Supreme Court held: "K.S.A. 21-4614 does not authorize or require that time an individual resides in a private residential facility as a condition of a preconviction appearance bond be credited as time spent 'incarcerated' pending disposition of a case." 262 Kan. at 754. The court explained that the only restriction on Palmer's liberty was "the requirement that he be in the facility at night, a restriction which would have been imposed upon any individual in residence," but during the day, the defendant was "free to come and go as he wished." 262 Kan. at 754. According to the Supreme Court, these circumstances did not qualify as "the constructive control of the courts, corrections officials, or law enforcement agencies." 262 Kan. at 754.

Three years after *Palmer*, our court in *State v. Parks*, 27 Kan. App. 2d 544, 544-47, 6 P.3d 444 (2000), addressed whether Parks was entitled to jail time credit under K.S.A. 21-4614 for time spent under house arrest with electronic monitoring as a condition of his appeal bond. Following *Palmer*, our court concluded that Parks was not entitled to jail time credit for the time he spent under house arrest while on appeal bond because the conditions of his bond were not sufficient to constitute incarceration. *Parks*, 27 Kan. App. 2d at 547-48.

Five years later, our Supreme Court decided *Guzman*, 279 Kan. 812, which is that court's latest exposition on this issue. In *Guzman*, the defendant was released on bond with the condition that he be held under 24-hour-a-day house arrest with electronic monitoring. After conviction and sentencing, the district court denied Guzman's motion for jail time credit for the time he spent on house arrest prior to the disposition of his case.

On appeal, Guzman argued he was entitled to jail time credit under K.S.A. 21-4614 because house arrest was the equivalent of incarceration and "he was not free to come and go as he wished and that this degree of restriction on his freedom was virtually the same as confinement in a jail." 279 Kan. at 814. The State countered that if house arrest and incarceration are the same, "then posting a bond to obtain release from jail for the purpose of en-

tering house arrest is meaningless, *i.e.*, no advantage has been gained by Guzman." 279 Kan. at 814.

Our Supreme Court reasoned that the critical factor in the case was that Guzman had been released on bond. See 279 Kan. at 814-15. The court explained:

"In both *Palmer* and *Parks*, jail time credit was denied when defendants' entry into a facility after release from an actual jail was a condition of the bond which they posted. Guzman's situation, entry into house arrest after release from jail, clearly falls within this category.

. . . .

". . . Guzman was free on bail, *i.e.*, he had control over his place of custody inasmuch as he had a choice between (1) being released on bond to be in his own home under house arrest and (2) remaining in jail." *Guzman*, 279 Kan. at 814-15.

The Supreme Court held that Guzman was not entitled to jail time credit because he chose to be released on bond, and as a result, he accepted house arrest with electronic monitoring as a condition of his release. 279 Kan. at 815. In other words, the time Guzman spent under house arrest was "not time that he spent incarcerated pending the disposition of his case." 279 Kan. at 815-16.

As mentioned earlier, both *Palmer* and *Parks* considered whether the defendant was "under actual or constructive control of jail or prison officials," with particular attention given to the " 'circumstances of placement of the person in the facility' rather than 'the nature of the facility itself.' [Citation omitted.]" See *Palmer*, 262 Kan. at 753; *Parks*, 27 Kan. App. 2d at 547-48. In keeping with this precedent, in *Guzman*, the "circumstances of placement" at the Detention Center included that Guzman requested release from jail and accepted placement at the Residential Center as a condition of bond. *Guzman*, 279 Kan. at 814-15.

After *Guzman*, the Court of Appeals in a juvenile case considered the propriety of awarding jail time credit under K.S.A. 38-16,133 for time the juvenile spent at the Marillac Center, a residential treatment facility for juveniles. See *In re T.G.*, 35 Kan. App. 2d 216, 220-21, 133 P.3d 1279 (2005), *rev. denied* 280 Kan. 983 (2006). Our court applied *Guzman*, interpreting its holding to be

that "once a defendant or respondent accepts [bond] restrictions as preferable to incarceration, that individual may not claim those restrictions rendered his or her situation equivalent to incarceration." *In re T.G.*, 35 Kan. App. 2d at 221.

*Guzman* is dispositive of the present case. Graves had control over his place of custody because he sought release on bond rather than remaining in jail. Graves accepted the bond conditions mandated by the district court as preferable to jail, and the record establishes the benefits which accrued to Graves as a result of his choice. Unlike the Detention Center, in the Residential Center Graves was not kept in a secured facility under lock and key. Importantly, he was free to leave the facility to maintain employment during the day and only required to return at night. He was privileged to leave the facility for various appointments and visits with his family. Should Graves have attempted to leave the Residential Center without authorization, the staff would have employed persuasion rather than force in an effort to prevent his departure. In short, there is no equivalency between incarceration and the residential living provided by Johnson County Community Corrections. See *Guzman*, 279 Kan. at 815-16; *In re T.G.*, 35 Kan. App. 2d at 220-21.

On appeal, Graves also reprises an argument he raised in the district court. Graves cites to K.S.A. 21-4614a to support his statutory interpretation of K.S.A. 21-4614 that, for purposes of assessing jail time credit, the legislature intended incarceration to include community corrections residential living.

K.S.A. 21-4614a entitles a defendant whose probation, assignment to a conservation camp, or assignment to community corrections is revoked to jail time credit for time spent in a residential facility while on probation, assignment to a conservation camp, or assignment to a community correctional residential services program. See *Palmer*, 262 Kan. at 753.

K.S.A. 21-4614a(a) provides in pertinent part:

"In any criminal action in which probation, assignment to a conservation camp or assignment to community corrections is revoked and the defendant is sentenced to confinement, for the purpose of computing the defendant's sentence and parole eligibility and conditional release dates, the defendant's sentence is to be com-

puted from a date, hereafter to be specifically designated in the sentencing order of the journal entry of judgment or the judgment form delivered with the defendant to the correctional institution. *Such date shall be established to reflect and shall be computed as an allowance for the time which the defendant has spent in a residential facility while on probation, assignment to a conservation camp or assignment to community correctional residential services program.*" (Emphasis added.)

Graves argues that because this companion statute allows jail time credit for time spent in community corrections facilities *subsequent to* the disposition of the case, that time spent at such facilities *prior to* the disposition of the case while the defendant is on bond should also be credited under K.S.A. 21-4614.

The district court commented that Graves' argument was "at first blush very persuasive": "[T]he defendant argues that [it is] counter intuitive to say that identical confinement prior to sentencing should not be given jail credit when it is given jail credit post-sentencing pending a revocation. And that certainly is troubling to contemplate." The district court concluded, however, that the existence of K.S.A. 21-4614 and K.S.A. 21-4614a indicated the legislature intended to treat the computation of jail time credit differently in each of these contexts, especially since both statutes have been amended several times without reconciliation. The district court explained:

"This Court must assume that the legislature meant to draw a distinction between jail credit awarded presentencing, and jail credit award post-sentencing, given the fact that these two statutes sit literally side-by-side in the statute book, and have co-existed for about 20 years. Even the descriptive names given to the two statutes seem to indicate that the legislature intends to draw a distinction between the two types of confinement. [K.S.A. 21-]4614 is described as, quote, 'deduction of time spent in confinement,' end quote. [K.S.A. 21-]4614(a) [*sic*] is described as, quote, 'deduction of time spent in residential facility, conservation camp, or community correctional residential services program,' end quote."

On appeal, the State endorses the district court's interpretation of the dichotomy between K.S.A. 21-4614 and K.S.A. 21-4614a: "The legislature demonstrated through K.S.A. 21-4614a that it knew how to construct a statute which allows for jail time credit for time spent in a residential facility. The legislature decided to

not include that language in K.S.A. 21-4614. The difference was intentional."

The most fundamental rule of statutory construction is the legislature's intent governs if that intent can be ascertained. *Arnett*, 290 Kan. at 47. When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act *in pari materia* with a view towards reconciling and bringing the provisions into workable harmony if possible. *State v. Raschke*, 289 Kan. 911, 914, 219 P.3d 481 (2009).

Although "incarceration" is not specifically defined in K.S.A. 21-4614, the fact that K.S.A. 21-4614 excludes time spent at residential facilities for jail time credit and K.S.A. 21-4614a includes such facilities for jail time credit demonstrates the legislature intended to treat predisposition and postdisposition jail time credit differently. Had the legislature intended defendants to receive jail time credit for time spent in the facilities listed in K.S.A. 21-4614a prior to disposition of the case, it could have simply included these facilities in K.S.A. 21-4614 or it could have simply combined the two jail time credit statutes. Moreover, appellate courts may not delete or supply vital provisions in a statute; "[n]o matter what the legislature may have really intended to do, if it did not in fact do it, under any reasonable interpretation of the language used, the defect is one that the legislature alone can correct. [Citation omitted.]" *State v. Urban*, 291 Kan. 214, 216, 239 P.3d 837 (2010).

Finally, in *Urban*, our Supreme Court held that under K.S.A. 21-3809(b)(1), when a defendant released to a community corrections facility on bond "leaves or is absent from the facility without authorization, an aggravated escape charge cannot be pursued because the statutory definition of 'custody' cannot be met." 291 Kan. 214, Syl. ¶ 2. Although in *Urban* the Supreme Court did not comment on the propriety of awarding jail time credit for time spent in a community corrections facility prior to disposition, the Supreme Court's interpretation of "custody" in K.S.A. 21-3809(b)(1) seems consonant with the district court's interpretation of "incarcerated" in K.S.A. 21-4614 in this case. See 291 Kan. at 221. If a defendant residing in a community corrections facility while on bond prior to the disposition of the case is not in "custody" for

purposes of the aggravated escape statute, it is doubtful the legislature intended a defendant on bond residing at such a facility to be "incarcerated" for jail time credit purposes.

We hold that a defendant released on an appearance bond while awaiting the disposition of a criminal case may not receive jail time credit under K.S.A. 21-4614 for time spent in a community correctional residential services program.

Affirmed.