NOT DESIGNATED FOR PUBLICATION

No. 122,915

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHAUN R. MCKELLIP,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed June 25, 2021. Affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before POWELL, P.J., BRUNS, J., and STEVE LEBEN, Court of Appeals Judge Retired, assigned.


PER CURIAM: Shaun R. McKellip appeals from the district court's denial of his request to grant him jail credit. McKellip requested jail credit for the time he spent in an inpatient drug treatment facility while he was released on bond and awaiting sentencing after pleading guilty to an offender registration violation. As the district court found, Kansas statutes only require that a district court award jail credit for time that a defendant is incarcerated prior to sentencing. There is no statutory authority for the granting of jail

1

credit while a defendant is residing at a residential facility while on parole awaiting sentencing. Thus, we affirm the district court's denial of McKellip's motion for jail credit.

FACTS

The facts material to the resolution of this appeal are undisputed. McKellip entered a guilty plea to an offender registration violation on April 28, 2017. Under the terms of a plea agreement that he entered into with the State, McKellip agreed to complete an inpatient drug treatment program prior to sentencing. If he was successful in completing the program, the State agreed to join in McKellip's request for a downward dispositional departure. The district court modified McKellip's appearance bond, adding the condition that he "[s]uccessfully complete inpatient treatment at New Chance in Dodge City, KS" and that he "return to jail to be held until sentencing after the completion of inpatient treatment at New Chance."

On June 1, 2017, McKellip returned to the Sedgwick County jail after successfully completing the inpatient treatment program. Subsequently, on June 13, 2017, the district court held a sentencing hearing. As it had promised to do in the plea agreement, the State joined in McKellip's request for a downward dispositional departure. Accordingly, the district court granted McKellip's request for probation and imposed an underlying prison sentence of 43 months. No order was made regarding jail credit at that time.

About a year later, McKellip agreed that he violated the terms of his probation after his urine sample tested positive for methamphetamine, and the district court ordered that he serve a 48-hour jail sanction. In August 2018, McKellip returned to the inpatient treatment facility for approximately a month. A few months later, the State alleged that McKellip had once again violated the terms of his probation by testing positive for both THC and methamphetamine. The State also alleged that McKellip failed to report to his

2

probation officer as required. The following month, the State also alleged that McKellip committed the new crime of possession of paraphernalia.

At his probation revocation hearing, McKellip admitted to the allegations and waived his right to an evidentiary hearing. The district court revoked McKellip's probation and ordered him to serve his underlying sentence. In doing so, the district court calculated McKellip's jail credit award of 115 days. As part of its calculation, the district court included the 29 days McKellip spent at the inpatient treatment facility while on probation. A panel of this court subsequently affirmed the revocation of McKellip's probation and the imposition of his underlying sentence. *State v. McKellip*, No. 120,790, 2019 WL 6223351 (Kan. App. 2019) (unpublished opinion).

After a mandate was issued by this court, McKellip filed a motion seeking additional jail credit. In his motion, McKellip argued that the district court should also give him credit for the 27 days he spent in his initial inpatient treatment while he was on bond awaiting sentencing. In denying the motion, the district court found that K.S.A. 2020 Supp. 21-6615(a) "does not allow for credit for time in a residential facility unless one is on probation at that time." Thereafter, McKellip timely appealed.

ANALYSIS

The sole issue presented on appeal is whether the district court erred in denying McKellip's motion for additional jail credit for the time he spent in an inpatient treatment facility while on bond awaiting sentencing. In Kansas, "[t]he right to jail time credit is statutory." *State v. Hopkins*, 295 Kan. 579, 581, 285 P.3d 1021 (2012); see also *State v. Brown*, 38 Kan. App. 2d 490, 491, 167 P.3d 367 (2007) (right to jail time credit upon revocation of probation is statutory). Because this issue presents a question of statutory interpretation, our review is unlimited. *State v. Harper*, 275 Kan. 888, 891, 69 P.3d 1105 (2003).

3

The parties agree that K.S.A. 2020 Supp. 21-6615 controls jail credit. K.S.A. 2020 Supp. 21-6615(a) provides that in criminal actions in which a defendant is convicted and sentenced to confinement, the district court shall allow a jail credit "for the time which the defendant has spent incarcerated pending the disposition of the defendant's case." On the other hand, K.S.A. 2020 Supp. 21-6615 provides that in criminal actions in which probation is revoked and the defendant is sentenced to confinement, the district court shall allow credit "for the time which the defendant has spent in a residential facility while on probation . . . ." K.S.A. 2020 Supp. 21-6615(b).

Here, the district court appropriately awarded McKellip credit for the time he spent in an inpatient treatment facility while he was on probation as required by K.S.A. 2020 Supp. 21-6615(b). However, the district court did not award credit for the time he spent in an inpatient treatment facility while on bond awaiting trial. Of course, as McKellip candidly recognizes in his brief, neither K.S.A. 2020 Supp. 21-6615(a) nor (b) mention the granting of credit for the time a defendant spends in an inpatient treatment facility while on bond. And, as this court has recognized, because jail credit is statutory, "silence of the statute alone does not create a right to jail time credit." *State v. Chardon*, 57 Kan. App. 2d 177, 181, 449 P.3d 1224 (2019).

McKellip also acknowledges that in *State v. Palmer*, 262 Kan. 745, 942 P.2d 19 (1997), the Kansas Supreme Court held that jail credit is not awarded for time spent in a residential treatment facility as a condition of an appearance bond. In *Palmer*, our Supreme Court found that "K.S.A. 21-4614 (now K.S.A. 2020 Supp. 21-6615) does not authorize or require that time an individual resides in a private residential facility as a condition of [an] appearance bond be credited as time spent 'incarcerated' pending disposition of a case." 262 Kan. at 754. Nevertheless, McKellip argues that the facts of this case are distinguishable from *Palmer* because his appearance bond required him to return to jail to await sentencing when he completed drug treatment and, as such, "he was in the constructive control of jail officials."

4

The *Palmer* court ultimately concluded that the defendant was not entitled to jail time credit for the time he spent in a residential facility because "the facility where [he] resided . . . was a privately operated facility not subject to control of the courts, corrections officials, or law enforcement agencies." 262 Kan. at 753-54. Subsequently, in *State v. Guzman*, 279 Kan. 812, 112 P.3d 120 (2005), our Supreme Court considered the issue of whether a defendant was entitled to jail credit for the time he spent on 24-hour house arrest while out on bond. The *Guzman* court held that the defendant was not entitled to jail credit because he chose to be released on bond and accepted house arrest with electronic monitoring as a condition of his release. 279 Kan. at 815. Consequently, the time the defendant spent under house arrest was "not time that he spent incarcerated pending the disposition of his case." 279 Kan. at 815-16.

More recently, in *State v. Graves*, 47 Kan. App. 2d 808, 278 P.3d 993 (2012), a panel of this court relied on *Guzman* in holding that a defendant released on bond with the condition that he reside at a residential facility operated by the Johnson County Department of Corrections was not entitled to jail credit. The *Graves* panel found that the defendant "had control over his place of custody because he sought release on bond rather than remaining in jail" and that he had "accepted the bond conditions mandated by the district court as preferable to jail, and the record establishes the benefits which accrued to Graves as a result of his choice." 47 Kan. App. 2d at 816.

The *Graves* panel also found that the existence of different language in the jail credit statutes (now recodified into a single statute at K.S.A. 2020 Supp. 21-6615) demonstrated that "the legislature intended to treat predisposition and postdisposition jail time credit differently." 47 Kan. App. 2d at 818. Specifically, the panel found:

> "Had the legislature intended defendants to receive jail time credit for time spent in [a residential facility] prior to disposition of the case, it could have simply included these facilities . . . . Moreover, appellate courts may not delete or supply vital provisions

in a statute; '[n]o matter what the legislature may have really intended to do, if it did not in fact do it, under any reasonable interpretation of the language used, the defect is one that the legislature alone can correct. [Citation omitted.]' *State v. Urban*, 291 Kan. 214, 216, 239 P.3d 837 (2010)." *Graves*, 47 Kan. App. 2d at 818.

Similar to the *Graves* panel, we do not find that it is appropriate for us to add language to K.S.A. 2020 Supp. 21-6615. When a statute is plain and unambiguous, we are not to speculate about the legislative intent behind that clear language, and we should refrain from reading something into the statute that is not readily found in its words. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016). When the words of a statute are clear, as they are here, this court must presume that the Legislature intended the result reached in this case. See *State v. Ayers*, 309 Kan. 162, 163-64, 432 P.3d 663 (2019). Furthermore such "'questions of public policy are for legislative and not judicial determination, and where the legislature does so declare, and there is no constitutional impediment, the question of the wisdom, justice, or expediency of the legislation is for that body and not for the courts.'" *State v. Spencer Gifts*, 304 Kan. 755, 765, 374 P.3d 680 (2016) (quoting *State ex rel. v. Kansas Turnpike Authority*, 176 Kan. 683, 695, 273 P.2d 198 [1954]).

Here, McKellip had control over his place of custody insofar as he chose to be released on bond to attend drug treatment while awaiting sentencing instead of staying in jail. McKellip also received the benefit of the plea in agreement in that the State recommended a downward dispositional departure in exchange for his completion of treatment at the residential facility. Further, we find no evidence in the record to suggest that McKellip was under the control of the State while he was participating in treatment. Rather, a review of the record reflects that McKellip was responsible for transporting himself to and from the treatment facility. Consequently, we conclude that the record supports the district court's conclusion that McKellip was not "incarcerated" while participating in inpatient treatment pending trial sentencing.

6

We are not persuaded by McKellip's argument that because the conditions of his bond required that he was in the "constructive custody" of the jail while participating in the inpatient treatment program prior to sentencing. Unlike a person who is incarcerated and under the control of jail officials, McKellip was allowed to transport himself and there is no evidence in the record to suggest that the State controlled his actions while he was in treatment. Although there are usually consequences when a defendant fails to comply with the conditions of his or her bond, McKellip was in control of deciding whether to carry out the conditions set forth in the appearance bond that the district court modified based on the terms of his plea agreement.

Also, we are not persuaded by McKellip's argument that he was in a worse position for having entered into the plea agreement and carrying out the conditions in the appearance bond. McKellip seems to overlook the fact that he voluntarily entered into the plea agreement and benefitted from its terms. Because he chose to voluntarily participate in the inpatient treatment program prior to sentencing, the State joined in his request for probation. Unfortunately, even though the district court granted him probation, McKellip was unable to comply with its terms.

Affirmed.